FILED
CHARLOTTE, N.C.
02 DEC 12 PM 3: 46
U.S. DISTRICT COURT
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case No. *3:02CV521-MCK*

| | | |
|---|---|---|
| NUCOR CORPORATION,<br>Plaintiff, | ) ) ) | |
| v. | ) ) | COMPLAINT |
| RODNEY B. MOTT | ) ) | |
| Defendant. | ) ) ) | |

Plaintiff, Nucor Corporation ("Nucor"), complaining of the defendant, Rodney B. Mott ("Mott") alleges, upon personal knowledge with respect to itself and its own actions, and upon information and belief as to all other matters, as follows:

## PARTIES

1.    Nucor is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Charlotte, Mecklenburg County, North Carolina.

2.    Upon information and belief, defendant Mott is a resident of the State of Ohio.

### JURISDICTION and VENUE

3.    This Court has jurisdiction over this action under Section 1332 of Title 28 of the United States Code as this action is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

4.    Venue in this district is proper under 28 U.S.C. §§ 1391(a) and (c) in that this dispute rises out of the transaction of business in this district and a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

CLT 661126v1

## FACTS

5. Nucor manufactures steel products and is the largest steel manufacturer in the United States today. Through its affiliates, Nucor operates facilities in 10 states.

6. In 1966, Nucor relocated its corporate headquarters to Charlotte, North Carolina. At or about that time, Nucor expanded its business by opening up new operations in Texas and Alabama. Nucor thereafter, built its first steel mill in Darlington, South Carolina and other steel mills and facilities. Nucor manufactures carbon and alloy steel in bar, sheet and structural forms, steel joist and joist girders, steel deck, cold finished steel, steel fasteners, and metal building systems.

7. Nucor is known for, among other things, its strong emphasis on quality and technological leadership. Nucor built steel mills in Crawfordsville, Indiana, Hickman, Arkansas and Berkeley, South Carolina utilizing a revolutionary technology, thin-slab casting. Nucor was the first U.S. company to successfully commercialize this thin-slab casting technology in the United States.

8. The steel industry over the years has become a truly global industry. Nucor competes with steel manufacturers located both in the United States and around the world. In addition, Nucor sells its products in every state in the United States and sells certain of its products abroad. Nucor also uses many foreign and domestic suppliers, including suppliers located in South America, Russia and Ukraine.

9. In or about 1987, Nucor hired Mott. Mott was initially hired as the hot mill manager at Nucor's plant in Crawfordsville, Indiana. Thereafter, Mott was employed by Nucor as vice president and general manager of Nucor's start-up operation in Hickman, Arkansas and Berkeley, South Carolina and continued in that position until his resignation in January 2000.

2

Case 3:02-cv-00521-GCM    Document 1    Filed 12/12/02    Page 2 of 10

10. Mott was a senior executive at Nucor and was knowledgeable of and involved in virtually all aspects of management and operations in the business. In his positions at Nucor, Mott had access to and was aware of confidential business information of Nucor, including proprietary information concerning Nucor's technologies, its businesses, its methodologies and start-up practices, identification of key Nucor employees vital to a proper start-up operation, its customer base, marketing strategies and budget plans ("Confidential Business Information"). Nucor considers its Confidential Business Information to be proprietary and valuable information to its business and has taken reasonable measures to protect such information.

11. In connection with Mott's resignation from Nucor, Mott and Nucor entered into a non-compete agreement (the "Agreement"). Under the Agreement, Mott and Nucor agreed that Mott would be paid $200,000 by Nucor and in exchange for this consideration, Mott agreed that he would not engage in competitive activities with Nucor for period of two (2) years following the termination of his employment with Nucor. The consideration under the Agreement was also provided to compensate Mott for relinquishing certain Nucor shares previously issued to him in order to protect Nucor's goodwill. Mott negotiated the terms of the Agreement with Nucor.

12. The Agreement provides, in part, that for a period of two years beginning the first day Mott is no longer employed by Nucor, Mott would not "engage anywhere in the world in any Competing Business (as defined herein), directly on [Mott's] on behalf or indirectly on behalf of any other party, whether as proprietor, employee, officer, director, consultant, advisor, independent contractor, agent or other representative or in any other capacity" (emphasis added).

13. The Agreement defines "Competing Business" to mean "any business activity, (including research activities) involving the same or like activities as those conducted by Nucor or affiliates or activities that are reflected in the research of Nucor or its affiliates, and includes

3

the activities related to the commencement or establishment of a "Competing Business." (emphasis added).

14. Mott acknowledged in the Agreement that Nucor competes worldwide in the research, manufacture, marketing and sale and/or distribution of steel products.

15. The Agreement also contains a confidentiality provision which prohibits Mott from disclosing or using confidential information of Nucor. The Agreement provides "[Mott] shall not, at any time or in any manner, either directly or indirectly, disclose, divulge, reveal or use any information concerning, affecting or relating to Nucor and its affiliates. This includes but is not limited to, proprietary knowledge, confidential information, plant design, specifications and layouts, equipment design, product design and specifications, manufacturing processes, procedures and specifications, data processing programs, research and development projects, marketing and pricing data, and cost and financial data."

16. The Agreement provides that its provisions, including the Agreement's validity, would be interpreted and enforced under the laws of the State of Delaware.

17. Mott's last day of employment with Nucor was January 29, 2000. Under the terms of the Agreement, Mott's obligations with respect to the non-compete continued until January 30, 2002.

18. In or about September 2001, Mott contacted Nucor to see if a position was available for him at Nucor. After being advised that a position was not available for him, Mott several weeks later, contacted Nucor again to inquire whether he could be released early from his obligations under the Agreement. At that time, Mott did not disclose his plans or intentions in terms of engaging in any competitive activity. Nucor advised Mott that a release from his obligations under the Agreement could be negotiated for additional consideration. Mott declined that offer and did not pursue further discussions with Nucor over this issue.

4

CLT 661126v1

19. Upon information and belief, Mott, in or about October 2001 embarked on a course designed and intended to engage in competing business activities in violation of his obligations under the Agreement. Upon information and belief, Mott approached an investment banker concerning a possible acquisition of Trico Steel Company, a steel company that was in bankruptcy but whose assets were for sale. Nucor was itself bidding on the Trico assets at the time. Nucor advised the investment banker of Mott's obligations under the Agreement. Further upon information and belief, the investment banker declined to permit Mott further access to the bidding on the Trico assets.

20. In November 2001, certain assets of LTV Corporation, which had been in bankruptcy, were announced to be publicly for sale. These assets included certain steel works in Ohio. Bidding procedures were instituted for the sale of these assets, which required initial bids to be submitted to the debtor in the bankruptcy by no later than January 28, 2002.

21. Upon information and belief, Wilbur Ross ("Ross") engaged Mott as a consultant by no later than December 2001 to analyze the LTV assets for possible acquisition and to form a new company utilizing these assets in competition with Nucor. Further upon information and belief, Mott at that time disclosed to Ross the existence of the Agreement and its terms.

22. Upon further information and belief, Mott reviewed the assets of LTV, engaged in due diligence and provided consulting services to Ross in December 2001 and January 2002 regarding the acquisition of the LTV assets and the formation of a new company in the steel industry.

23. On or about February 28, 2002, it was announced publicly that Ross was the successful bidder on the LTV assets. At or around that time, it was also announced that Ross would form a company, subsequently named International Steel Group, Inc. ("ISG"), which

5

CLT 661126v1

would enter into the steel making business, and that Mott would head up this new company as the president and chief executive officer.

24. Upon information and belief, Mott has acted as the president and chief executive officer of ISG since its formation and ISG is in the business of manufacturing and producing steel products in competition with Nucor. Upon further information and belief, Mott was instrumental in the formation of ISG and the acquisition of its steel making assets, including, the assets of LTV.

25. Upon information and belief, Mott, using Nucor's Confidential Business Information, contacted and hired key Nucor employees and used other confidential information of Nucor for the start-up of ISG, including a senior electrical supervisor, a metallurgist/day melter and an accountant in its Berkeley, South Carolina facility and also contacted and hired a controller with whom Mott worked at Nucor. Upon information and belief, Mott also unsuccessfully attempted to hire other key employees of Nucor.

26. ISG, upon information and belief, reopened the LTV facilities in May 2002 and began manufacturing steel products for sale in the United States in competition with Nucor.

## CLAIM ONE
### (Breach of Contract)

27. Nucor repeats and re-alleges each and every allegation contained in Paragraphs 1-26 above hereto.

28. Nucor and Mott entered into a valid contract by which Mott was paid $200,000 and agreed not to engage in Competing Business activities for a period of two years following his termination from Nucor.

29. Mott breached the terms of the Agreement by, among other things, providing consulting services to Ross regarding the acquisition of the LTV assets and the formation of ISG.

6

CLT 661126v1

30. Mott's breaches of the Agreement were material and went to the very heart of the Agreement. Accordingly, Nucor has been damaged as approximate result of Mott's breaches of the Agreement. Nucor seeks judgment in its favor on its claim and an award of damages for the full amount of the consideration paid to Mott under the Agreement.

## CLAIM TWO
### (Breach of Contract)

31. Nucor repeats and re-alleges each and every allegation contained in Paragraphs 1-30 above hereto.

32. Nucor and Mott entered into a valid contract by which Mott acknowledged that Nucor maintained Confidential Business Information and agreed not to disclose or use such information following his termination of employment with Nucor.

33. Upon information and belief, Mott breached the confidentiality provision of the Agreement by using or disclosing Nucor's Confidential Business Information in connection with his involvement in the purchase of LTV's assets directly or indirectly by Ross and the start-up and operations of ISG.

34. Mott's breach of the confidentiality provision of the Agreement has proximately caused Nucor damage in an amount to be determined at trial.

## CLAIM THREE
### (Quasi Estoppel)

35. Nucor repeats and re-alleges each and every allegation contained in Paragraphs 1-34 above hereto.

36. Mott negotiated the terms of the Agreement and subsequently accepted the benefits under that Agreement without objection. For over two years, Mott has not questioned

7

the validity of the Agreement, or the validity of the non-compete covenant, and has retained the $200,000 paid to him.

37. Mott also sought a release from his continuing obligations under the Agreement in or about September 2001.

38. By accepting the benefits of the Agreement without objection and requesting a release from the Agreement's non-compete provision, Mott is equitably estopped from asserting any theory on which he may attempt to avoid his obligations under that Agreement.

39. Accordingly, Nucor is entitled to judgment finding Mott equitably estopped from challenging the validity of the Agreement and its covenants.

## CLAIM FOUR
### (Unjust Enrichment)

40. Nucor repeats and re-alleges each and every allegation contained in Paragraphs 1-39 above hereto.

41. Mott has been unjustly enriched, at the expense of Nucor, in an amount in excess of $200,000, by virtue of Mott's conduct, alleged above, including but not limited to, negotiating and entering into the Agreement, receiving $200,000 consideration under the Agreement and then intentionally breaching the Agreement by engaging in a competing business during the two-year period in which Mott agreed not to engage in such business and using Nucor's Confidential Business Information in the process.

42. Nucor has been damaged as a result of Mott's conduct, and is entitled to recover the amount Mott has been unjustly enriched in excess of $200,000.

## CLAIM FIVE
### (Unfair Competition)

43. Nucor repeats and re-alleges each and every allegation contained in Paragraphs 1-42 above hereto.

8

44.     Pursuant to N.C. Gen. Stat. § 75-1.1, Mott's actions as set forth in this complaint, including but not limited to his intentional breach of the Agreement and improper use of Nucor's Confidential Business Information in the formation and start-up of ISG, constitute an unfair method of competition and an unfair or deceptive act or practice in and affecting commerce, which has and will injure the goodwill and business of Nucor and has and will result in losses to it. Mott's conduct alleged herein constitutes aggravating circumstances.

45.     Nucor has suffered damages in excess of $200,000 as a direct and proximate result of Mott's improper actions.

WHEREFORE, Nucor respectfully prays the Court that:

1.     The Court enter judgment against Mott in the amount of damages as may be proven at trial;

2.     The Court treble the damages and award attorneys' fees pursuant to N.C. Gen. Stat. §§ 75-1.1 and 75-16;

3.     The Court tax the costs of this action against defendant Mott;

4.     Trial by jury be had on all issues that are so triable; and

5.     The Court grant plaintiff such other and further relief as it deems just and proper.

This _12 th_ day of December, 2002.

William L. Rikard, Jr.
N. C. Bar 3601

Eric D. Welsh
N. C. Bar No. 29629

9

CLT 661126v1

**OF COUNSEL:**

**PARKER, POE, ADAMS & BERNSTEIN L.L.P.**
401 South Tryon St., Suite 3000
Charlotte, North Carolina 28202
(704) 372-9000

10